IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 07-14215-CIV-MOORE

JUDITH BUNNELL,

    Plaintiff,
v.

J.C. PENNEY CORPORATION, INC.,
a foreign corporation,

    Defendant.
_____/

**CLOSED CIVIL CASE**

## ORDER ON MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment (dkt # 43). Plaintiff filed a Response in Opposition (dkt # 57). A Reply (dkt # 60) was also filed.

UPON CONSIDERATION of the Motion, Response, Reply, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order:

**I.    BACKGROUND**

Judith Bunnell ("Plaintiff") filed a complaint against J. C. Penney Corporation, Inc. ("Defendant" or "Penney") alleging that her termination was improper because it resulted from age discrimination and/or retaliation for reporting suspected illegal conduct of other Penney employees. See Compl. at 1.

Plaintiff's career at Penney began in 1991, when, at the age of 52, she was employed as a custom decorator.[1] Plaintiff worked as a decorator at the Cupertino, California Penney store for over ten years. See Pl. St. (dkt # 55) at 1. While employed in California, Plaintiff received many

---

[1] Plaintiff's statement of facts in her original Circuit Court complaint differ from those listed in her concise statement of facts (dkt # 55). For example, a discrepancy exists as to whether Plaintiff began her career with Defendant at a Minnesota or California location.

accolades for her profitability, sales, and decorating abilities. Id. at 2.

Defendant has stores located throughout the United States, and Defendant attempted to recruit Plaintiff from California to its southern Florida region for approximately five years. Id. In late April 2005, at the age of 64, Plaintiff requested a transfer to the Penney store located in Martin County, Florida because she and her husband had planned to relocate to that area. Id. Plaintiff utilized Penney's contingent transfer system whereby Plaintiff could transfer to another store location and, as long as the transfer was carried out within six months, she would not loose any benefits or seniority. Id. Plaintiff's transfer was accepted and she was employed as a decorator at the Jensen Beach, Florida store. According to Plaintiff's deposition, Kathleen Evenson ("Evenson"), who was the regional manager for Defendant's southeastern custom decorating division, was one of the individuals who informed Plaintiff that her transfer had been approved and Evenson referred to Plaintiff's transfer as "the gift." See Bunnell Dep. at 22. Evenson, however, was not responsible for hiring Plaintiff. See Evenson Dep. at 23.

Plaintiff began work at the Jensen Beach store on May 2, 2005. See Pl. St. (dkt # 55) at 3. When Plaintiff arrived at the Jensen Beach location, her supervisor was Laura Schraeder ("Schraeder").[2] Id. The other custom decorators working at the Jensen Beach location were Vicky Lombardo ("Lombardo"), age 46, and Pat McKelvey ("McKelvey"), age 48. Id. Lisa Humbert ("Humbert"), who was in her forties, worked as a decorating coordinator at the Jensen Beach store. Id. Plaintiff alleges that on her first day of work Lombardo and McKelvey harassed Plaintiff based upon her age. The disparaging age related remarks allegedly consisted of the following comments, which were derived from Plaintiff's recollection, not verbatim recordings:

---

[2] On February 1, 2006, due to a reconfiguration of the Penney's districts, Kelli Kirby ("Kirby") replaced Schraeder as Plaintiff's supervisor.

2

"You don't need the money, you are rich, how old are your kids, your husband is retired, why don't you retire, you are a big gun from California, you had shutters on your windows and you're taking bread from my mouth." See Bunnell Dep. at 56-63. Following this unfriendly interrogation, Plaintiff complained separately to regional manager Evenson and her direct manager Schraeder explaining that she felt unwelcome Id. at 57-65. Over the course of her employment at the Jensen Beach store, Plaintiff sent hundreds of emails to management where she complained about sales leads, customer leads, and problems at the store. In some of those emails, Plaintiff claimed she was being treated unfairly, but does not appear to have specifically mentioned age discrimination. See Pl. St. (dkt # 55) at 4.

On or about September, 2005, approximately four months after Plaintiff began working at the Jensen Beach location, Plaintiff believed that her co-workers McKelvey and Lombardo were giving customers unauthorized discounts, undercharging, and overcharging for products. See Pl. Compl. at 3. Upon learning of this information, Plaintiff informed Schraeder and eventually Evenson about the possible misdeeds. See Bunnell Dep. at 123-26. Schraeder apparently got upset with Plaintiff about this information, but Evenson assured Plaintiff that she would look into the allegations. Id. Evenson requested that Schraeder look into Bunnell's allegations of fraud. See Schraeder Dep. at 64. After investigating the alleged incidents, Schraeder determined that McKelvey had mistakenly overcharged a customer for an installation and a refund was issued. Id.

On February 1, 2006, Penney's southeastern district was re-zoned; consequently, Kelli Kirby ("Kirby") replaced Schraeder as Plaintiff's supervisor. See Pl. St. (dkt # 55) at 5. After this change in management, Plaintiff now contacted Kirby via email complaining about the methods that the decorator leads and tasks were being divided and assigned. Id. In addition,

3

Kirby sent emails out to all of the decorators regarding personnel issues such as timeliness, lead distribution, and customer assistance. Id. at 6. Vickie Waterman ("Waterman"), who served as Penney's human resources manager, was also apprised of the complaints and troubles at the Jensen Beach store and was included on many of the emails flowing between the managers and the decorators. Id. In an effort to minimize any additional conflict between Plaintiff, McKelvey, and Lombardo, on May 17, 2006, Bunnell was reassigned to Penney's Vero Beach location, which is approximately 28 miles north of the Jensen Beach store.[3] See Def. St. (dkt # 43) at 5.

Despite Plaintiff's relocation, issues between Plaintiff and the Jensen store decorators continued. See Def. Ex. 5-16. As a result, regional manager Evenson and HR director Waterman scheduled a mandatory meeting with all of the custom decorators and coordinators to be held on June 13, 2006. See Pl. St. (dkt # 55) at 7. The June 13th meeting was attended by Evenson, Waterman, Kirby, McKelvey, Lombardo, Humbert, Hargraves, and Plaintiff. Id. at 8. The meeting was designed to end the squabbling and complaints between the decorators, establish strict rules for treatment of co-workers, and create a fresh start. See Hargraves Dep. at 25. Waterman met with the entire group of decorators, but also met with each custom decorator privately. During the private discussions with the custom decorators other than Plaintiff, Waterman apparently addressed that the other decorators needed to take Plaintiff with a grain of salt and advised the other decorators not allow themselves to get sucked in by Plaintiff. See Evenson Dep. at 145.

Also during the meeting, all of the custom decorators and coordinators were required to

---

[3]This Court takes this opportunity to point out many of Plaintiff's statements articulated in its Concise Statement of Facts are not supported by the citations that follow. This Court will assume that it was the result of oversight and not done intentionally to mislead. Regardless, this error has made sifting through Plaintiff's "Concise Statement" more burdensome.

sign a document entitled "Coordinator/Decorator Behavior and Lead Rotation Procedures" ("Behavior and Procedure document"). See Def. St. (dkt # 43) at 6. The document set forth procedures for client intake and proscribed standards of conduct that each coordinator and/or decorator was to follow and stated that violation of these standards would result in termination. See Def. Ex. 16. The document included the following requirements:

> [a]ll associates will be courteous and professional when working with other associates in the market. . . . No associate is to down grade, complain or comment about past/future incidents or associates to other Custom Decorating associates, store associates or customers. No confronting other Custom Decorating associates about perceived problems. Any associate caught breaking these procedures with malicious intent or doing anything to undermine managements actions to bring harmony to the market will be dismissed.

Id. At the June 13th meeting, Plaintiff, along with the other decorators and coordinators, signed the Behavior and Procedure document.

Approximately sixteen days after Plaintiff signed the Behavior and Procedure document, she had an unpleasant exchange with installer Joe Di Carlo at a customer's home. See Def. St. (dkt # 43) at 6. Di Carlo was a Penney installer and he had been assigned to install drapes for one of Plaintiff's customers. Di Carlo arrived at the customer's house before Plaintiff and explained to the customer that the drapes could not be installed because they were missing the installation hardware. Id. The customer became upset that the order would not be installed and called Plaintiff, who was en route to the customer's home, multiple times. When Plaintiff arrived at the customer's home, she engaged with Di Carlo regarding the missing materials. Allegedly, Di Carlo immediately started blaming Plaintiff for not ordering the correct hardware and he kept repeating you did not order the correct hardware. See Bunnell Dep. at 171-73. Plaintiff raised her voice back at Di Carlo and stated "Joe, you've done this before and this is the last time. Please Stop." Id. According the other onsite installer, Plaintiff stated in front of the customer

5

that if Di Carlo did not complete the job she would have him fired. See Def. Ex 17(b) (Kevin Hanes' Statement).

Following the exchange between Plaintiff and Di Carlo, the customer complained to Penney's Custom Decorating Department, which resulted in an investigation into the incident. Defendant investigated the incident and, on July 7, 2006, terminated Plaintiff as a result. Defendant maintains that Plaintiff was terminated for disparaging a fellow associate in front of a customer, which all the decorators had been recently warned would not be tolerated, and specifically for violating the terms of the Coordinator/Decorator Behavior document she signed sixteen days earlier. Plaintiff argues that this reason is merely pretextual and that she was actually fired because of her age and/or her discovery of illegal billing perpetrated by the other custom decorators.

## II.    STANDARD OF REVIEW

The applicable standard for reviewing a summary judgment motion is unambiguously stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. Twiss v. Kury, 25 F.3d 1551, 1554 (11th Cir. 1994). "The party seeking summary judgment bears the initial burden to demonstrate to the district court the basis for its motion for summary judgment and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show an absence of any genuine issue of material fact." Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 918 (11th Cir. 1993). An issue of fact is

"material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. <u>Id.</u>

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. <u>Id.</u> However, the nonmoving party:

> may not rely merely on allegations or denials in its own pleading; rather, its response–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial

Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).

## III. DISCUSSION

### A. Florida WhistleBlower's Act

In Count I, Plaintiff alleges that, through her termination, Defendant violated Florida Statute §448.102, which reads:

> An employer may not take any retaliatory personnel action against an employee because the employee has: . . .(3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

To establish a violation of Florida Statute § 440.102(3) ("statute"), Plaintiff must establish the same requirements of a Title VII Civil Rights Act claim. See <u>Rice-Lamar v. City of Fort Lauderdale</u>, 853

7

So.2d 1125, 1132 (Fla. Dist. Ct. App. 2003).[4] To establish a prima facie case under Title VII, a plaintiff is required to show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; (3) and a causal link exists between engaging in the protected activity and the adverse employment action. Id. After establishing the prima facie case, the employer must produce a non-retaliatory reason for the employment action, which the plaintiff then bears the burden of proving was actually just pretextual and a false cover for the impermissible retaliatory employment action. Id. at 1133.

Plaintiff argues that her observation and report of possible fraud through over-charging constitutes statutorily protected expression. Statutorily protected expression exists where a plaintiff can show "that she opposed an unlawful employment practice which she reasonably believed had occurred." Pardon v. BellSouth Telecommunications, Inc., 196 F.Supp.2d 1250, 1256 (S.D. Fla. 2002) (aff'd, 62 Fed.Appx 317 (11th Cir. 2003); see also Little v. United Technologies, Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997 ) (stating a "plaintiff, therefore, need not prove the underlying discriminatory conduct that he opposed as actually unlawful in order to establish a prima facie case and overcome a motion for summary judgment"). Plaintiff was instructed by her supervisor to look at the sales records of two of her co-workers so that Plaintiff might obtain some insight on what type of items were selling and increase her productivity. See Bunnell Dep. at 124. During her review of the records, Plaintiff found a few instances of what she believed were unauthorized discounts and at least one example where a customer was overcharged by approximately $400. Id. at 127-30.

---

[4] "[T]he Eleventh Circuit Court of Appeals has stated that for claims brought pursuant to the Florida Whistleblower Act: '[i]n the absence of any guiding case law, the district court correctly applied the analysis used in Title VII retaliation cases.'" Pardon v. Bellsouth Telecommunications, Inc., 196 F.Supp.2d 1250, 1255 (S.D. Fla. 2002).

Plaintiff's observation that prices were being raised and lowered uncharacteristically based upon her fifteen years of experience with Penney's custom decorating department indicates that she had a reasonable belief that a rule, such as consumer fraud, had been violated. Further, Florida law prohibits unfair or deceptive acts in the conduct of trade or commerce, and intentional overcharging of a customer, would fall within this category. See Fla. Stat. § 501.204. Further, assuming it is even necessary to prove an actual violation of law, as stated by the District Court in White v. Purdue Pharma, Inc., 369 F. Supp.2d 1335, 1337-38 (M.D. Fla., 2005), taking all factual inferences in the light most favorable to the non-moving party, this Court finds that knowingly overcharging a customer would constitute a violation of Florida law. Therefore, Plaintiff has established that when she reported the instances of possible fraud she was engaged in statutorily protected expression.

As Plaintiff's termination clearly constitutes an adverse employment action, the remaining link in establishing Plaintiff's prima facie case of retaliatory personnel action is whether the requisite causal nexus exists between Plaintiff's protected report of the violations and her termination. The threshold for establishing the causal link lacks vigor and only requires a plaintiff to "prove that the protected activity and the negative employment action are not completely unrelated." Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1461 (11th Cir. 1998). Despite this low threshold, Plaintiff is unable to establish that her termination is not completely unrelated to her reporting the possibility of overcharging.

Plaintiff stated that on or about August 2005, she began to look through McKelvey and Lombardo's sales and observed overcharging, under charging, and self sales. See Compl. at 3. Plaintiff conveyed this information to Schraeder and then, on or about September 2005, to Evenson. Id. Thus, Plaintiff's observation and initial report to Evenson was approximately ten months prior to her July 2006 termination. On or about March 2006, Plaintiff again talked with Evenson about

9

the alleged stealing and Plaintiff was informed that an audit had been performed and no remedial action was necessary. Id. at 4. This second inquiry regarding the alleged fraud or stealing took place four months before Plaintiff's termination.[5] Therefore, Plaintiff's March 2006 inquiry, approximately four months prior to her termination, represents the closest possible temporal link between her observations and her termination. When issues of establishing causation have arisen in cases that have a similar prima facie requirement, the Eleventh Circuit has held that a three month period "between the protected expression and the adverse action" does not allow a reasonable inference of causal relation by itself. See Higdon v. Jackson, 393 F.3d 1211, 1221 (11th Cir. 2004) (finding that three month period in ADA context does not establish necessary causal relationship). Thus, the lack of temporal proximity between Plaintiff's report and her termination, by itself, fails to establish the necessary causal link.

Furthermore, Plaintiff was permitted to file her report and an inquiry was made, which established that there had been only a few errors, if any. See Schraeder Dep. at 64. The fact that an inquiry occurred also discredits Plaintiff's claims that she was terminated as a result of her report because after the inquiry was completed, any "exposure" or "harm" allegedly caused by Plaintiff's whistle-blowing would be moot as the alleged illegality was now revealed and corrective measures toward the "wronged" customer were taken.[6] Irrespective of the time period between Plaintiff's report and her termination, Plaintiff, along with all of the other custom decorators, was summoned

---

[5]Plaintiff states that she also reported fraud and stealing by the other custom decorators to her supervisors in May of 2006. Plaintiff, however, provides no support for this statement, but instead lists fourteen separate citations, none of which establish or even corroborate that Plaintiff reported fraud and stealing in May of 2006.

[6] In this case, it is important to note that the alleged wrongs were possible unauthorized discounts and one case of overcharging a customer that was determined to be accidental, not widespread and pervasive fraud that Defendant could be tempted into concealing.

10

to a meeting to discuss moving forward as a team after all of the problems that had occurred between co-workers. The vast majority of these problems dealt with professionalism and complying with procedures not with perpetuation of fraud, which was only reported once.

The June 13, 2006 meeting established that the past was in the past and that all decorators would now be required to follow a new set of strict guidelines. The contents of the Behavior and Procedure document mandated a new beginning, but with a strict code of professionalism. The meeting and the document also serve to signify that Defendant and the custom decorating department was moving forward beyond the decorator's infighting, prior unprofessional behavior, and allegations of misconduct. The spirit of the meeting and document distance any tenuous connection between Plaintiff's report and her termination. Consequently, Plaintiff fails to establish a prima facie case of retaliation in violation of Fla. Stat. § 440.102 and her claim must fail.

Furthermore, despite this Court's finding that Plaintiff failed to establish a prima facie case of retaliation, this Court, for the sake of completeness, also analyzes whether Plaintiff's termination actually constituted a legitimate, non-retaliatory action assuming Plaintiff had been able to establish a prima facie case of discrimination. Defendant states, and the deposition testimony supports, that there were a lot of problems with the decorators at the Jensen and Vero Beach locations. These issues went far beyond the suspected fraud and/or stealing and involved Plaintiff sending over seven hundred emails regarding sales, customer leads, and day to day issues. See Pl. (dkt # 55) at 4. For example, Plaintiff contacted Defendant regarding issues such as sales leads and her share of those leads. See Def. Ex. 5 (dkt # 50). Further, Defendant's emails to the decorators also indicate that there were issues of timeliness, cooperation, failure to follow lead protocol, and inability to work productively together. See Def. Ex. 6-9 (dkt # 50). Specifically, one installer resigned because of Plaintiff's continued pestering. Id. As a result of this inability to get along and work in a

professional manner, management called a meeting with all the decorators to work out their differences, try and rebuild the team, and make clear that any further unprofessional behavior would not be tolerated. See Def. Ex. 9 & 12(dkt # 50).

In response to these problems, regional manager Evenson and HR director Waterman scheduled a special meeting unique to the Jensen and Vero Beach stores. The meeting was designed to move the customer decorators forward, but also to provide clear rules of conduct and procedure in order to restore professionalism and profitability to the unit. As discussed in section I above, at the meeting, Plaintiff, along with the other custom decorators, signed the Behavior and Procedure document. The document aimed to end the types of problems that had been occurring, including unprofessional and immature behavior with other associates, which was precisely the behavior Plaintiff was criticized for on her otherwise positive annual performance review. See Def. Ex. 11 (dkt # 50) ("It would also be much easier for her if she could learn to ignore what her other team mates may be thinking of her and stick to what she truly has a talent for").

Despite her signing of the Behavior and Procedure document, approximately sixteen days later Plaintiff got into a verbal argument with an installer at a customer's home, which violates the spirit of the document's mandate that "[a]ll associates will be courteous and professional when working with other associates in the market. . . . No Associate is to down grade, complain or comment about past/future incidents or associates to . . . store associates or customers. . . . Any associate caught breaking these procedures with malicious intent or doing anything to undermine managements actions to bring harmony to the market will be dismissed." See Def. Ex. 16 (dkt # 55). Plaintiff's argument, at a customer home, with installer Di Carlo constitutes unprofessional behavior with another associate and Plaintiff was explicitly warned that there would be a harsh penalty for breaking the rules. Further, this incident was not created or even monitored by Defendant, but rather

this incident arose because the customer voiced her complaint regarding the unacceptable service she had received. Therefore, despite any apparent inequity in Plaintiff being terminated for one violation, she subscribed to the new rules that included the possibility of dismissal, and management made clear that unprofessional behavior that jeopardized harmony to the market would not be tolerated.[7] Thus, Plaintiff's Whistleblower claim must also fail because she has failed to rebut Defendant's legitimate, non-retaliatory reason for termination.

**B.     Age Discrimination**

Plaintiff's second claim alleges that she was terminated and harassed because of her age in violation the Florida Civil Rights Act ("FCRA") Florida Statute § 760.01. Fla. Stat. §760.01 (stating "[t]he general purpose of [FCRA] . . . are to secure for all individuals within the state freedom from discrimination because of race . . . age . . . and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities"). Federal law is applicable to Florida state law claims alleging discrimination because the Florida Civil Rights Act mirrors Title VII. See Maniccia v. Brown, 171 F.3d 1364, 1367 (11th Cir. 1999). Thus, the law of this Circuit discussing the Age Discrimination in Employment Act ("ADEA") is instructive.

Plaintiff, in establishing a prima facie case for age discrimination, must show that she "(1) was a member of the protected age group, (2) was subject to adverse employment action, (3) was qualified to do the job, and (4) was replaced by a younger individual." Benson v. Tocco, Inc., 113 F.3d 1203, 1207-08 (11th Cir. 1997). For purposes of this order, the Court accepts that Plaintiff has established a prima facie case for age discrimination and meets the required four elements. However, once a plaintiff has established a prima facie case, the burden is then placed upon

---

[7] In fact, another installer had previously chosen not to continue working because of Plaintiff's treatment of him. See Def. Ex. 7 (dkt # 50).

defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. See Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997). For the employer to satisfy its burden, "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motived by discriminatory animus." See Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997). As articulated above, Defendant's proffered reason, that Plaintiff was terminated for violating newly enacted standards at a customer's home, was found by this court to be a legitimate, non-discriminatory reason for termination. This proffered reason satisfies Defendant's intermediate burden and nullifies the prima facie case's presumption of discrimination. Thus, the burden once again shifts back to the Plaintiff to "demonstrate that the proffered reason was not the true reason for the employment decision." Id. To avoid judgment as a matter of law, after establishing their prima facie case, Plaintiff must put on sufficient evidence to allow a fact finder to disbelieve an employer's proffered explanation for its action. Id. at 1332.

It is within this last stage of the burden shifting analysis, where Plaintiff bears the burden of putting forth sufficient evidence to show that Defendant's reasons for termination were pretextual, that the Court finds itself. In addition, "[t]he burden of proving pretext merges with the plaintiff's ultimate burden of proving that age was a determining factor in [the] discharge" and this burden can be met by "showing that a discriminatory reason more likely than not motivated the employer's decision, or by discrediting the employer's proffered explanation." See Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993).

Plaintiff puts forth sufficient evidence to establish that prior to her termination she was age 65 and member of a protected age group, qualified to do her job [based upon her most recent annual review], and taking the facts in the light most favorable to the non-moving party, she was replaced

by associates who were much younger than she was.[8] While this evidence establishes her prima facie case of discrimination and can be used buttress her burden of proving pretext, it does not, by itself, refute Defendant's legitimate reason for termination, which was premised upon Plaintiff's failure to abide by sworn to standards. Plaintiff admits that she signed the Behavior and Procedure document, which stated that dismissal would result for violation, and her behavior sixteen days after signing the document was violative of the document's standards. In attempting to rebut this proffered reason, Plaintiff argues that the termination decision was really based upon her age.

Plaintiff argues that she was subject to harassment by her co-workers based upon her age. See Bunnell Dep. at 56-63. The remarks cited by Plaintiff as discriminatory, however, are professional jealousy not age discrimination. Id. Plaintiff was not being questioned as to her ability to perform or handle her job based upon her age, but rather she was subject to unkind comments because she was adept at her job and was coming into a new store where she might take commissions from already existing employees. Furthermore, Plaintiff has produced some evidence where she complained of store procedures and an inability to get along with her associates, but she does not provide evidence that these problems were result of her age. Further, the evidence indicates that the problems had to do with her success and attitude, not her age. See Hargraves Dep. at 18 (discussing why some of the other custom decorators did not like Plaintiff, "the only thing they seemed to agree on was that they all disliked Judith. And I think it has something to do with the fact that she was very goal oriented and very successful with customers"). Furthermore, decorator Gundula Hargraves, who Plaintiff recruited and who was approximately the same age as Plaintiff, stated that she did not think that age had anything to do with the problems between the decorators. Id. at 21

---

[8]Plaintiff's replacement associates where substantially younger than she was and were age 43, 47, and 35.

15

("I don't think that age had anything to do with it. . . She was pursuing customers, which I personally do not see as a negative, but I don't see it age related").

Plaintiff also alleges that her firing was somehow orchestrated by her co-workers McKelvy, Lombardo, and Humbert. See Pl. Resp. (dkt # 57) at 20. As discussed above, it was Plaintiff's actions that resulted in a third-party customer complaint and led to her termination, not her co-workers. Management descended upon the Jensen and Vero Beach stores to try and establish order, professionalism, and profitability. It was Plaintiff's actions, however, that were in direct contravention to this effort. The Behavior and Procedure document states that dismissal, not a progressive warning, is the sanction for violating the agreement. See Def. Ex. 16 (dkt # 50) (stating "any associate. . . doing anything to undermine managements actions to bring harmony to the market will be dismissed"). Plaintiff has failed to show that Defendant's reason for termination was pretextual or that her dismissal was motivated based upon her age. As the Eleventh Circuit has stated, "[F]ederal Courts 'do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how . . . high-handed its decisional process . . . the ADEA does not interfere. Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior." Curtis v. Teletech Customer Care Managment, 208 F.Supp.2d 1231, 1245 (N.D. Ala., 2002) (quoting Elrod v. Sears, 939 F.2d 1466, 1470 (11th Cir. 1991)). Therefore, Plaintiff's claim for age discrimination similarly fails.

IV. **CONCLUSION**

For the forgoing reasons, it is

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (dkt # 43) is GRANTED. It is further

ORDERED AND ADJUDGED that Defendant's Motion to Strike (dkt # 59) is DENIED

AS MOOT. It is finally

ORDERED AND ADJUDGED that this case is now CLOSED and all remaining motions not yet ruled upon are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 14th day of May, 2008.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: U.S. Magistrate Judge Frank J. Lynch, Jr.
All Counsel of Record